# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **PATRICIA L. G.,**[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 18-2148-JWL** |
| **NANCY A. BERRYHILL,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A).  Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I.    Background

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff argues that the ALJ erred at steps two, three, and four of the Commissioner's sequential evaluation process by failing to cite evidence to support his finding that certain of Plaintiff's impairments are not "severe" within the meaning of the Act, by finding that Plaintiff's condition neither meets not equals the severity of a Listed Impairment, in weighing the medical opinions, by inadequately evaluating the three phases of the step four evaluation of Plaintiff's past relevant work as required by the court in <u>Winfrey v. Chater</u>, 92 F.3d 1017 (10th Cir. 1996), by inadequately evaluating Plaintiff's allegations of symptoms resulting from her impairments, by relying on portions of the evidence favorable to his findings while ignoring or mischaracterizing other evidence, by inadequately evaluating the medical records from Saint Vincent Clinic, by inadequately considering the testimony of her friend and co-worker, Louise Bailes, by failing "to make any 'findings regarding the actual functional demands of [P]laintiff's past relevant work'" (Pl. Brief 33) (quoting <u>Clardy v. Barnhart</u>, No. 03-2347-JWL, 2004 WL 737486, at *6 (D. Kan. Apr. 5, 2004)), and by failing to include all of Plaintiff's limitations in the hypothetical question he posed to the vocational expert (VE).

The court's review is guided by the Act. <u>Wall v. Astrue</u>, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. <u>Lax v. Astrue</u>, 489 F.3d 1080, 1084 (10th Cir. 2007); <u>accord</u>, <u>White v. Barnhart</u>, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than

a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether

claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the process--determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

After considering Plaintiff's allegations of error, the court finds no error in the decision at issue.

## II.    Preliminary Discussion

This case was decided at step four of the sequential evaluation process (R. 564), and Plaintiff alleges errors at step two, step three, and step four of the process, without

particularly organizing her Brief to provide all her arguments regarding a single issue (such as medical opinions or Plaintiff's allegations of limitations resulting from her symptoms) in one place. The court has considered each of her arguments and will generally address them in the order they appear when applying the Commissioner's sequential evaluation process.

The court notes that because this case was decided at step four of the sequential evaluation process the burden was on Plaintiff at every step of the process to demonstrate the requisite facts to show that she is disabled within the meaning of the Act and the regulations and that she is unable to perform her past relevant work as a dispatcher either as she performed it or as it is generally performed within the economy. The organization of Plaintiff's Brief presents the narrative that at step two she has more impairments that are "severe" within the meaning of the Act and the regulations than the ALJ found; that at step three her condition meets or equals the severity criteria of Listing 1.04A for disorders of the spine with evidence of nerve root compression; that at step four she is unable to perform her past relevant work as a dispatcher; and that "substantial and uncontradicted evidence indicates Plaintiff is disabled and entitled to benefits" (Pl. Br. 34) requiring remand for an immediate award of benefits. Throughout her Brief, Plaintiff points to record evidence tending to support her view and a finding of disability. Moreover, although Plaintiff argues that the ALJ did not properly evaluate her allegations of disabling symptoms and did not properly evaluate the opinion evidence, she spread portions of these arguments throughout her briefing and did not organize each argument into a cohesive unit.

The approach Plaintiff has taken in her Brief ignores both the legal standard applicable and the court's responsibility in judicial review of a decision of the Commissioner. The court must determine whether the Commissioner applied the correct legal standard in evaluating Plaintiff's application for benefits and whether substantial evidence in the record as a whole ("such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") supports the Commissioner's final decision. And, it is Plaintiff's burden to prove that the Commissioner erred. The beginning point in the court's review is the final decision of the Commissioner (the ALJ's decision in this case), and Plaintiff must demonstrate that the ALJ applied an erroneous legal standard and/or that the record evidence is insufficient to support the ALJ's findings--that the record evidence supporting the ALJ's findings is not "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." The evidence in a Social Security record is almost always equivocal. Therefore, Plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. [The court] may not displace the agency's choice between two fairly conflicting views, even though [it] would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

## III.     Step Two

Plaintiff acknowledges the ALJ found she has "severe" impairments of degenerative disc disease (DDD), degenerative joint disease (DJD), and a remote laminectomy, but argues that "the ALJ found Plaintiff's Chronic Obstructive Pulmonary Disease and Insomnia were not severe because they were controlled by medication, but cited no evidence to support his determination." (Pl. Br. 4). Contrary to Plaintiff's assertion, the ALJ cited as an example for his determination Exhibit 19F at p. 155 (R. 1037) which reveals that Plaintiff's COPD was assessed as stable and the plan was to "continue medications as prescribed," thereby suggesting that COPD is controlled by medication—and Plaintiff has not shown otherwise. The question for judicial review is whether the ALJ's findings are supported by record evidence, not whether he cited to all the record evidence supporting each finding. The burden of proof at step two is on Plaintiff, and she does not direct the court to evidence demonstrating her insomnia and COPD are "severe" within the meaning of the Act and regulations. In any case, as the Commissioner argues, where the ALJ has found one or more severe impairments at step two, the failure to find additional impairments are severe is not cause for reversal so long as the ALJ, in determining the claimant's RFC, considers the effects "of <u>all</u> of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'" <u>Hill v. Astrue</u>, 289 F. App'x. 289, 292, (10th Cir. 2008) (emphasis in original). Plaintiff has not made the requisite showing.

## IV.    Step Three

Plaintiff argues that the ALJ erred in finding Plaintiff's condition does not meet or medically equal the severity of Listing 1.04A. She argues this constitutes failure to apply

the correct legal standard because the ALJ failed to provide the "'specific weighing of the evidence' or 'minimal level of articulation'" required by the Tenth Circuit. (Pl. Br. 6) (quoting <u>Clifton v. Chater</u>, 79 F.3d 1007, 1009-10 (10th Cir. 1996)). Plaintiff explains how, in her view, the evidence, including medical opinions, demonstrates that the Listing is met—or at least medically equaled—and she argues that "the ALJ failed to identify the objective evidence he relied on or rejected in determining Plaintiff's spine impairments did not meet or equal the requirements of Listing 1.04A." (Pl. Br. 11).

### A. Step Three Standard

The Commissioner has provided a "Listing of Impairments" which describes certain impairments that she considers disabling. 20 C.F.R. §§ 404.1525(a), 416.925(a); <u>see also</u>, Pt. 404, Subpt. P, App. 1 (Listing of Impairments). If Plaintiff's condition meets or equals the severity of a listed impairment, that impairment is conclusively presumed disabling. <u>Williams</u>, 844 F.2d at 751; <u>see also</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 141 (1987) (if claimant's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled"). However, Plaintiff "has the burden at step three of demonstrating, through medical evidence, that h[er] impairments 'meet <u>all</u> of the specified medical criteria' contained in a particular listing." <u>Riddle v. Halter</u>, No. 00-7043, 2001 WL 282344 at *1 (10th Cir. Mar. 22, 2001) (quoting <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 (1990) (emphasis in <u>Zebley</u>)). "An impairment that manifests only some of [the Listing] criteria, no matter how severely, does not qualify" to meet or equal the listing. <u>Zebley</u>, 493 U.S. at 530.

"The [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. The listings define impairments that would prevent an adult, regardless of h[er] age, education, or work experience, from performing <u>any</u> gainful activity, not just 'substantial gainful activity.'" <u>Zebley</u>, 493 U.S. at 532-33 (emphasis in original) (citing 20 C.F.R. § 416.925(a) (1989)). The listings "streamlin[e] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." <u>Yuckert</u>, 482 U.S. at 153. "Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively." <u>Caviness v. Apfel</u>, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998).

<u>Medical equivalence</u> to a listing may be established by showing that the claimant's impairment(s) "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a). The determination of medical equivalence is made without consideration of vocational factors of age, education, or work experience. 20 C.F.R. §§ 404.1526(c), 416.926(c).

**B.      The ALJ's Step Three Findings**

The ALJ explained that he had reviewed all the evidence, and he concluded that Plaintiff's impairments do not meet or equal the severity of any Listing. (R. 551). He noted that he had specifically considered Listing 1.04 (Disorders of the spine). <u>Id.</u> He discussed two medical opinions which concluded that Plaintiff's condition does not meet or medically equal the severity of any Listing—those of the medical expert (ME) who testified at the first ALJ hearing in this case, Dr. Axline, and of the state agency medical

consultant who reviewed the record evidence at the reconsideration level, Dr. Siemsen. Id. He also discussed the opinion of Plaintiff's treating physician, Dr. Rettinger, that Plaintiff's condition meets the severity of Listing 1.04A. Id. at 560-61. Here is his discussion:

> With regard to the claimant's physical impairments, the undersigned has specifically considered Listing 1.02 (*Major dysfunction of a joint(s) (due to any cause*) and Listing 1.04 (*Disorders of the spine*). The medical expert who testified in this case, John W. Axline, M.D., who is a board certified orthopedic surgeon, testified that in his opinion, the claimant's lumbar spine disorder does not meet or medically equal any listing. The undersigned gives significant weight to this opinion from Dr. Axline because it is consistent with the objective medical evidence in the record and because he is an orthopedic specialist.
>
> The undersigned also gives significant weight to the opinion of the State [sic] agency medical consultant, Gerald Siemsen, M.D., on this issue because it is consistent with the medical records in evidence. On November 3, 2010, Dr. Siemsen affirmed the "Physical Residual Functional Capacity Assessment" form that had previously been submitted by the State [sic] agency on July 9, 2010 after opining that the claimant's impairments do not meet or medically equal any listed impairment (Exhibits 3A, 5A, 8F [(R. 98, 100-07, 459)]).

(R. 551-52) (italics in original).

> On July 12, 2016, following his most recent office visit with the claimant in the record, Dr. Rettinger completed medical source statements that included a "Medical Questionnaire" form and an annotation on a print out of "**l.04 Disorders of the spine**" (l6F [(R. 872-75)]). Dr. Rettinger opined in his hand written annotation that the claimant "meets condition l.04A based on physical exam, MRI findings, and clinical history," and that "she has met these conditions since April, 2008." The undersigned gives no weight to this opinion because it is conclusory and not supported by the objective evidence expressly cited above in this decision.
>
> In order to meet the criteria of Listing l.04A, the medical evidence must show the following:
>
>> **1.04 *Disorders of the spine*** (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis,

10

degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:

A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

Since the claimant's medical records do not show nerve root compression, the claimant's DDD of the lumbar spine does not meet the criteria of Listing l.04A.

In the "Medical Questionnaire" form, Dr. Rettinger affirmed that the limitations he identified in his June 14, 2013 letter and medical source statement had continued since that date, and that they would continue to exist one year form the date he completed this form.  For the same reasons set forth above regarding the June 14, 2013 letter and medical source statement, the undersigned gives little weight to Dr. Rettinger's statement in this "Medical Questionnaire" form.

(R. 560-61) (quoting Listing 1.04A, 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 1.04A) (bold and italics in original).

### C.    Analysis

To meet Listing 1.04A as quoted above by the ALJ, an impairment must first meet either criterion of paragraph 1.04: (I) compromise of a nerve root or (II) compromise of the spinal cord.  20 C.F.R., Pt. 404, Subpt. P, App. 1 § 1.04.  In addition, Listing 1.04A requires evidence of nerve root compression characterized by; (1) neuro-anatomic distribution of pain, (2) limitation of motion of the spine, (3) motor loss accompanied by either (a) sensory loss, or (b) reflex loss, and (only if the lower back is involved) (4) positive straight-leg raising, while both (a) sitting and (b) supine.  Id. § 1.04A.  Moreover, the criteria in (1) through (4) must all be present simultaneously.  Atkins v.

<u>Colvin</u>, No. 15-1168-JWL, 2016 WL 2989393, at *6-12 (D. Kan. May 24, 2016) (Finding that the Tenth Circuit would look primarily to the purpose and structure of the Social Security regulations and agree with the Commissioner's explanation in <u>Acquiescence Ruling</u> (AR) 15-1(4) that the severity of Listing 1.04A is only met when all of the criteria in Listing 1.04, paragraph A are simultaneously present.).  The ALJ found that Listing 1.04A is not met in this case because the records do not show nerve root compression. (R. 561).

In reaching this conclusion, the ALJ relied upon an MRI performed on June 4, 2009 which showed "no definite evidence of a focal herniated nucleus pulposus or focal extradural nerve root compression," <u>id.</u> at 364 (quoted in the decision at 555), and an MRI performed on September 14, 2012 which "did not indicate any nerve root compression or impingement."  (R. 560) (citing Exhibit 11F, pp. 1-2, R. 511-12) (italics omitted).  The evidence cited by the ALJ supports his finding.   The report of the June 2009 MRI explicitly states what the ALJ quoted, and the September 2012 MRI reports <u>mild</u> neural foraminal stenosis, and advanced disc space loss at L5-S1 (the location of the laminectomy performed in 1982) "without significant disc herniation."  (R. 512).

Plaintiff cites online articles about facet arthropathy and neural foraminal stenosis suggesting what is possible or what may occur when one of these conditions is present. (Pl. Br. 5 & nn.3-5).  She argues, quoting <u>Clifton</u>, that the ALJ's "analysis does not reflect the required 'specific weighing of the evidence' or 'minimal level of articulation' required to support a Step Three determination" because there is evidence Plaintiff's condition "may meet or equal a listed impairment's requirements" but the ALJ did not

adequately discuss that evidence.  Id. at 7.  She argues that the mild neural foraminal stenosis reflected in the report of the September 2012 MRI demonstrates the error in the ALJ's finding that "'none of the claimant's imaging studies' confirmed 'nerve root compression or impingement.'"  Id. (citing an online definition and allegedly quoting without citation the ALJ's decision).  Each of these arguments is without merit.

What is possible when one has a medical condition, or what may occur as a result of that condition does not demonstrate that the criteria of a Listing are met.  Rather, the determinative inquiry is whether all the criteria of the Listing are met in a particular case—and whether those criteria are met simultaneously in a case involving Listing 1.04A.  Plaintiff does not point to record evidence demonstrating such facts here.  Nor does the holding of Clifton apply to this case.  In Clifton, "the ALJ did not discuss the evidence or his reasons for determining that appellant was not disabled at step three, or even identify the relevant Listing or Listings; he merely stated a summary conclusion that appellant's impairments did not meet or equal any Listed Impairment."  79 F.3d at 1009.  Here, on the other hand and as noted above, the ALJ discussed the evidence, identified the Listings he specifically considered, and explained why he found Listing 1.04A was not met.  That is "specific weighing of the evidence" and at least the "minimal level of articulation" has been met here.

Plaintiff's attempt to equate mild neural foraminal stenosis with nerve compression is equally unavailing.  First, Plaintiff's suggestion that the ALJ found "'none of the claimant's imaging studies' confirmed 'nerve root compression or impingement,'" is belied by the decision in this case.  The ALJ stated that "the evidence shows *that none*

13

*of the claimant's imaging studies have confirmed nerve root impingement.*"  (R. 560) (italics in original).  He did not state, however, that the evidence showed that none of the imaging studies confirmed nerve root compression although he did state that the September 2012 MRI did not indicate any nerve root compression or impingement.  Id. The ALJ's statements were made when he was discussing Dr. Rettinger's statement that "radiology studies (x-rays and MRI's) have confirmed that degenerative disc disease (DDD) and osteoarthritis (OA) of the lumbar spine are the sources of [Plaintiff's] nerve root impingement and chronic, severe lumbar pain."  (R. 560, quoting R. 523).  He explained why Dr. Rettinger's opinion in this regard was not accepted:

> However, in fact, the evidence shows *that none of the claimant's imaging studies have confirmed nerve root impingement*.  As noted above, the lumbar spine MRI report dated June 4, 2009 specifically stated that there was no definite evidence of nerve root compression (Exhibit 2F, pp. 20-21 [(R. 363-64)]).  *The lumbar spine MRI report dated September 14, 2012 also did not indicate any nerve root compression or impingement (Exhibit 11F, pp. 1-2 [(R. 511-12)]).*

(R. 560) (italics in original).

Plaintiff argues based upon an online definition that neural foraminal stenosis "refers to compression of a spinal nerve as it leaves the spinal canal through the foramen," and therefore equates to nerve root compression as that term is used in Listing 1.04A.  (Pl. Br. 7).  But, Plaintiff does not show that a "spinal nerve as it leaves the spinal canal" is the same thing as a "nerve root," and if it is not, then compression of that spinal nerve is not equivalent to nerve root compression.  Moreover, Plaintiff's argument forgets that the medical criteria defining a Listed Impairment are intended to be a higher level of severity than the statutory standard and should not be read expansively.  A claimant may

14

not demonstrate Listing 1.04A is met with mere nerve root compression, but she must show "compromise of a nerve root" with nerve root compression characterized by the simultaneous presence of the four factors discussed above. 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 1.04 (underline added).

Plaintiff attempts to make this showing using Dr. Mongeau's report of her June 21, 2010 examination of Plaintiff (Pl. Br. 8) (citing R. 422-23), in conjunction with a June 25, 2010 progress note from Saint Vincent Clinic. (Pl. Br. 8) (citing R. 436). She argues that "Dr. Mongeau documented neuro-anatomic distribution of pain; limitation of motion of the spine; muscle weakness; and positive straight leg raising test (sitting and supine)," and that the Saint Vincent progress note "documented 'decreased sensitivity in feet-heel/greater toes' or 'sensory loss.'" Id. (quoting R. 436). However, Plaintiff's view of the evidence is far too expansive. This is especially true in light of the fact that Dr. Axline who is expert in the Social Security Administration's regulations and the Listings, reviewed both Dr. Mongeau's report and Saint Vincent's records and opined that Plaintiff's disc disease does not meet or equal a Listing. (R. 34). Plaintiff does not explain how Dr. Mongeau's finding of "5/5 motor strength in all major muscle groups at the hips, knees, ankles and toes" but "[c]ore muscle weakness in the deep abdominal and lumbar paraspinals muscle groups as well as pelvic stabilizers of gluteus medius and minimus" equates to "motor loss" as defined in the Listing (atrophy with associated muscle weakness or muscle weakness). Nor does she explain how "decreased sensitivity in feet-heel/greater toes" as noted in the Saint Vincent Clinic note (R. 436) (emphasis added) equates to the "sensory loss" required by the Listing to accompany motor loss.

In a final attempt to show error in the ALJ's Step three evaluation Plaintiff points out that an individual is also found disabled if her condition is medically equal to a Listed impairment (Pl. Br. 8-9); points to record evidence that she has "facet arthropathy;" cites online articles suggesting symptoms that can characterize facet problems, Lumbar Facet Syndrome, or Facet Joint Syndrome, id. at 9-10; cites record evidence suggesting such symptoms and/or impairments are present in this case, id. at 10-11; and concludes that "the ALJ failed to identify the objective evidence he relied on or rejected in determining Plaintiff's spine impairments did not meet or equal the requirements of Listing 1.04A." (Pl. Br. 11).

The discussion above belies Plaintiff's argument that the ALJ failed to consider and identify the evidence he relied upon. The ALJ explained his evaluation and the evidence upon which it is based. Plaintiff's appeal to online articles and to symptoms and evidence suggesting that she has additional impairments not adequately considered or discussed by the ALJ is simply an invitation to the court to reweigh the evidence, arrive at a judgment different than that of the ALJ, and to substitute its judgment for that of the Commissioner. There are two specific problems with that approach. First, its premise is not supported by the evidence. The ALJ clearly considered the impairments suggested by Plaintiff and specifically discussed "facet disease" (R. 552, 554, 562), "facet joints" (R. 555), and "facet arthritis" in the decision at issue. (R. 561 (an enumerated "disorder of the spine"), 562 (revealed in an x-ray taken September 21, 2007)). Secondly, and as already noted, the court is prohibited from reweighing the evidence and substituting its judgment for that of the Commissioner. Bowman, 511 F.3d at 1272; accord, Hackett,

395 F.3d at 1172; see also, Bowling, 36 F.3d at 434 (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [its] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.")

To the extent Plaintiff is arguing that the ALJ did not consider whether her condition medically equals the severity of a Listed Impairment and did not identify evidence demonstrating that it does not, the court notes it is Plaintiff's burden to prove that her condition medically equals a Listed Impairment, not the Commissioner's burden to prove otherwise. While Plaintiff suggests that her condition is medically equal to Listing 1.04A, she does not point to record evidence demonstrating that her condition is at least equal in severity and duration to each of the criteria of Listing 1.04A. Plaintiff has shown no error in the ALJ's step three evaluation.

V.      **Step Four**

Plaintiff argues that the ALJ's step four evaluation is both legally deficient and not supported by the record evidence. She argues that the ALJ erred by inadequately evaluating the three phases of the step four evaluation of Plaintiff's past relevant work as required by the court in Winfrey, 92 F.3d at 1023, by inadequately evaluating Plaintiff's allegations of symptoms resulting from her impairments, by relying on portions of the evidence favorable to his findings while ignoring or mischaracterizing other evidence, by inadequately evaluating the medical records from Saint Vincent Clinic, in weighing the medical opinions, by inadequately considering the testimony of her friend and co-worker, Louise Bailes, by failing "to make any 'findings regarding the actual functional demands

of [P]laintiff's past relevant work'" (Pl. Brief 33) (quoting <u>Clardy</u>, 2004 WL 737486, at

*6), and by failing to include all of Plaintiff's limitations in the hypothetical question he

posed to the VE.  The court recognizes that most of the errors alleged in this section of

Plaintiff's Brief (excepting phases two and three of the <u>Winfrey</u> analysis and the

hypothetical posed to the VE) are allegations of error in the ALJ's assessment of

Plaintiff's RFC—which takes place between step three and step four of the sequential

evaluation process.  20 C.F.R. §§ 404.1520(e), 416.920(e).  Therefore, the court begins

with the alleged errors in the ALJ's RFC assessment.

## A.    Preliminary Considerations

The court notes that the decision in this case is a decision on remand from this

court of a decision by another ALJ.  (R. 632-644).  In that case, the court noted Plaintiff

alleged errors "in weighing the medical opinions of Dr. Rettinger; [the ALJ] failed to

make specific findings in the three phases of her step-four evaluation; and improperly

rejected the credibility of Plaintiff's allegations of symptoms resulting from Plaintiff's

impairments."  <u>Id.</u> at 634.  The court found remand was necessary in that case "because

the Commissioner failed properly to explained [sic] her consideration of Dr. Rettinger's

treating source opinions," and noted that on remand the plaintiff could "make further

arguments regarding alleged errors in the ALJ's RFC assessment, credibility

determination, and step four evaluation," issues on which the court declined to provide an

advisory opinion.  <u>Id.</u> at 636.  On remand, the Appeals Council vacated the earlier

decision and remanded for the ALJ to offer a new hearing, take any action to complete

the administrative record and "for further proceedings consistent with the order of the

court." Id. at 647. On remand the case was assigned to a different ALJ for reasons which are not apparent from the record, but in her argument to the Appeals Council, Plaintiff suggested that the reassignment was not made in accordance with HALLEX (Hearings, Appeals, and Litigation Law Manual). Id. at 710-11. In her Brief before this court Plaintiff does not allege error in this regard and the court does not address it. The Council declined to assume jurisdiction over the decision on remand. Id. at 531.

Dr. Ashcraft treated Plaintiff at the Shawnee Mission Pain Management Center. (R. 377-85). Although Dr. Aschraft did not provide a specific medical opinion, the ALJ summarized his treatment records. Id. at 555-56. In doing so, he stated that Plaintiff "reported good pain relief with the ESIs [(epidural steroid injections)] she received on June 16, 2009, July 6, 2009, and July 20, 2009." Id. at 556 (citing R. 324-27, 361-62, 380-81). Apparently because the records cited by the ALJ reveal only "transient good relief" Plaintiff suggests the ALJ relied "upon 'portions of evidence favorable to his position while ignoring' or mischaracterizing other evidence in the same medical records." (Pl. Br. 16) (quoting Harman v. Barnhart, 362 F.3d 676, 681 (10th Cir. 2004)). Plaintiff's argument is without merit. Plaintiff admits the epidural injections "helped initially." Id. (quoting Dr. Rettinger's treatment note at R. 414). Moreover, the ALJ also noted Plaintiff's report that the "[e]pidural steroid injections only helped temporarily." (R. 553). In context, the decision does not suggest that the ALJ ignored or even mischaracterized this evidence.

In a similar fashion, Plaintiff points out that "the ALJ stated Plaintiff's "treatment records show very little in the way of back complaints or findings … [and] [h]er more

recent records show that naproxen has been the only medication prescribed for her DDD

and DJD impairments, which is not indicative of someone with disabling pain." (Pl. Br.

16) (quoting R. 557 and citing R. 562 ("As noted above, her treatment records from Saint

Vincent Clinic show very little in the way of back complaints or findings"). Plaintiff then

cites some Saint Vincent Clinic records in which pain of some form is recorded. Id. at

17. As Plaintiff admits, the January 2010 treatment note states that Plaintiff was

"[a]dvised against Darvocet and Soma. [She] can use tylenol, ibuprofen or naprosyn."

(R. 442) (underline in original). This evidence supports the ALJ's finding that naproxen

has been the only medication prescribed for DDD or DJD in the recent records.

Moreover, the entire paragraph containing the ALJ's summary of the Saint Vincent

Clinic records in this regard is as follows:

> On June 25, 2010, the claimant requested a refill of Flexeril for her back
> pain from her provider at Saint Vincent Clinic (Exhibit 7F, p. 12 [(R.
> 436)]). Following this visit, the claimant has continued to receive her
> medical care at Saint Vincent Clinic for medication management and
> routine follow up visits for her diabetes and hypertension conditions on a
> regular basis through at least June of 2016, but her treatment records *show
> very little in the way of back complaints or findings* (Exhibits 7F, l0F, 19F
> [(R. 425-58, 464-510, 883-1064)]). Her more recent records show that
> naproxen has been the only medication prescribed for her DDD and DJD
> impairments, which is not indicative of someone with disabling pain
> (Exhibit 19F [(R. 883-1064)]). On June 26, 2015, the claimant reported
> having "no back pain" when she was seen for an injury to her right hip after
> she fell out of a popup trailer (Exhibit 19F, p. 106 [(R. 988)]). On
> September 8, 2015, it was noted that she "appears to be in good health and
> spirits," and her only musculoskeletal complaint was that her right hip
> continued to hurt "but seems to be improving greatly" (Exhibit 19F, p. 121
> [(R. 1003)]). On January 4, 2016, she reported that she was "feeling good"
> and she did not have any musculoskeletal complaints (Exhibit 19F, p. 155
> [(R. 1037)]). The medical provider who examined her at this visit noted no
> musculoskeletal findings and a normal neurological exam.

(R. 557) (underline and italics in original).

A fair reading of this paragraph reveals the ALJ found that in the six years between June 2010 and June 2016 Plaintiff had been prescribed naproxen for her pain and that the records "*show[ed] very little in the way of back complaints or findings*." The court has reviewed Plaintiff's argument that her "back pain is fully documented in the Saint Vincent's [sic] records," and finds that although there is mention of back pain in the records about which Plaintiff quibbles, the ALJ accounted for that fact, and his findings in the paragraph at issue are supported by the record evidence (it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

Plaintiff complains, "The ALJ also failed to consider the other impairments documented in Plaintiff's medical records from Saint Vincent's [sic]." (Pl. Br. 18). The record does not support this argument. In his step two analysis, the ALJ recognized that Plaintiff had argued to the Appeals Council that the ALJ in the earlier decision had failed to consider all her impairments. (R. 551). He concluded, "The undersigned has specifically considered all of the claimant's documented medical impairments in the record, but the only severe impairments are those set forth above in this finding." Id. The court's general practice, from which it finds no reason to depart here "is to take a lower tribunal at its word when it declares that it has considered a matter." Flaherty v. Astrue, 515 F.3d 1067, 1071 (10th Cir. 2007) (quoting Hackett, 395 F.3d at 1173)).

Plaintiff claims the ALJ erred in considering the third-party lay opinion of her co-worker, and friend, Ms. Bailes, because he found the testimony of "little value," which Plaintiff argues is contrary to the requirement stated in SSR 06-3p and SSR 16-3p that an

21

ALJ will consider such testimony.  Again, Plaintiff is asking that the court reweigh the testimony and accord it greater weight than did the ALJ—something it may not do.

The Tenth Circuit has explained the consideration due third-party lay opinions.  In the Tenth Circuit, an ALJ is not required to make specific, written findings regarding each third-party opinion when the written decision reflects that the ALJ considered that opinion.  Blea, 466 F.3d at 914-15; Adams v. Chater, 93 F.3d 712, 715 (10th Cir. 1996).  In Adams, the court "decline[d] claimant's invitation to adopt a rule requiring an ALJ to make specific written findings of each witness's credibility, particularly where the written decision reflects that the ALJ considered the testimony."  93 F.3d at 715.  The Adams court determined "that the ALJ considered the testimony of claimant's wife in making his decision because he specifically referred to it in his written opinion," and the court found no error in the ALJ's failure to make specific, written findings regarding the testimony. Id. (emphasis added).  Ten years later, the Tenth Circuit confirmed the rule that an ALJ is not required to make specific written findings regarding third-party lay opinions if the written decision reflects that the ALJ considered it.  Blea, 466 F.3d at 915.

Here, as Plaintiff admits, the ALJ recognized that Ms. Bailes testified at the supplemental hearing before the earlier ALJ, and he specifically summarized "[t]he most probative portions of" her testimony.  (R. 563).  In a second paragraph, he explained the weight accorded her testimony and the reasons for that weight:

> Since Ms. Bailes is not a medical source and did not observe the claimant
> in a professional capacity, her testimony is of little value in determining the
> extent to which the claimant's alleged limitations are a result of her medical
> impairments.  Moreover, by virtue of her relationship with the claimant,
> Ms. Bailes cannot be considered to be a disinterested third party witness

whose statements would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges. Accordingly, the undersigned gives little weight to Ms. Bailes' [sic] testimony.

Id. (emphasis added by the court). The ALJ in this case did much more than is required. In addition to demonstrating that he had considered the opinion, he explained his reasons for discounting it.

## B. Medical Opinions

Plaintiff claims the ALJ erred in weighing the medical opinions of Dr. Rettinger (Pl. Br. 3, 8, 22-25), Dr. Axline, id. at 6, 8, 23-25; and Dr. Siemsen. Id. at 6, 8, 23-25. The Commissioner argues that the ALJ reasonably resolved the conflicting opinion evidence. She points to record evidence supporting the ALJ's evaluation of Dr. Rettinger's opinions and to the ALJ's "detailed summary of the relevant evidence of record in assessing Plaintiff's RFC" (Comm'r Br. 13, 14).

### 1. The ALJ's Findings

As noted above, in his step three analysis the ALJ accorded significant weight to the opinions (that Plaintiff's condition did not meet or medically equal the severity of a Listed Impairment) which were provided by the ME, Dr. Axline, and by the state agency medical consultant, Dr. Siemsen. His reasons for doing so were that the opinions are consistent with the record medical evidence and because Dr. Axline is an orthopedic specialist. (R. 551-52).

The ALJ provided an unusually extensive summary of Plaintiff's allegations of symptoms resulting from her impairments and of the medical record evidence. (R. 552-

63).  Within that summary, he summarized Dr. Mongeau's report of her consultative examination, recognizing Dr. Mongeau's note that Plaintiff's "ability to ambulate would be enhanced if she had a single-point cane," and finding that "Dr. Mongeau did not offer any opinions with regard to the claimant's specific physical functional capabilities or limitations."  (R. 557).  The ALJ summarized a visit with Dr. Rettinger on June 7, 2013, four years after Plaintiff's last visit with Dr. Rettinger and while she continued to receive her primary care from the Saint Vincent Clinic, and the ALJ found "the purpose of the visit was to marshal support for her disability claims in preparation for her appeal of [the prior ALJ's] unfavorable opinion to the Appeals Council."  Id. at 558.  The ALJ accorded minimal weight to Dr. Rettinger's statements at that visit because the finding of disability is an administrative finding reserved to the Commissioner, his statements appear to be substantially based on subjective information provided by Plaintiff, his statements are not supported by objective medical evidence, and are inconsistent with Dr, Axline's opinion. Id. at 558-59.

The ALJ accorded minimal weight to the medical source statement Dr. Rettinger completed on Plaintiff's initial office visit on September 20, 2007 because it was based on speculation, was not supported by functional examinations or by the medical evidence, was inconsistent with Dr. Axline's opinion, and because Dr. Rettinger is not a specialist in orthopedics or neurology.  Id. at 559.  The ALJ noted that Dr. Rettinger wrote a letter to Plaintiff's counsel dated June 14, 2013 in which he opined:

> It is my firm opinion that since May 2009, and due to predicted worsening of [Plaintiff's] back pain, [she] should be limited to working up to four hours per day, performing two hours of activity at a time, during which she

is allowed to alternate positions, followed by 1-2 hrs. of inactivity and elevation of her lower extremities.

(R. 559) (quoting R. 521).  The ALJ accorded minimal weight to this opinion because it was based on speculation, was not supported by functional examinations or by the medical evidence and was inconsistent with Dr. Axline's opinion.  Id.  The ALJ also summarized the opinions appearing in a "Physical Residual Functional Capacity Assessment" form completed by Dr. Rettinger on June 14, 2013, the same date as the letter to Plaintiff's counsel.  Id. at 559-60.  In his discussion the ALJ noted:

Dr. Rettinger stated that he based his conclusions regarding these functions on "radiology studies (x-rays and MRI's) have confirmed that degenerative disc disease (DDD) and osteoarthritis (OA) of the lumbar spine are the sources of [Plaintiff's] nerve root impingement and chronic, severe lumbar pain."  However, in fact, the evidence shows *that none of the claimant's imaging studies have confirmed nerve root impingement.*  As noted above, the lumbar spine MRI report dated June 4, 2009 specifically stated that there was no definite evidence of nerve root compression (Exhibit 2F, pp. 20-21).  *The lumbar spine MRI report dated September 14, 2012 also did not indicate any nerve root compression or impingement (Exhibit 1lF, pp. 1-2).*

(R. 560) (italics in original).  The ALJ accorded minimal weight to this opinion for several of the same reasons he accorded minimal weight to the opinion reflected in the June 13, 2013 treatment notes—it appears to be substantially based on subjective information provided by Plaintiff, is not supported by objective medical evidence, and is inconsistent with Dr, Axline's opinion.  (R. 560).

The ALJ noted that Dr. Rettinger saw Plaintiff only two more times, November 23, 2015 and July 12, 2016, and that at the July 2016 visit he completed a medical source statement including a "Medical Questionnaire" and his annotation on a printout of Listing

1.04A discussed hereinabove when considering the allegations of error at step two and step three of the sequential evaluation process. As quoted above, he accorded no weight to the opinion that Plaintiff meets Listing 1.04A because it is conclusory and not supported by the medical evidence cited in the decision. (R. 561). He accorded little weight to the opinions in the "Medical Questionnaire" for the same reasons he discounted the June 14, 2013 letter and medical source statement—it was based on speculation, was not supported by functional examinations or by the medical evidence and was inconsistent with Dr. Axline's opinion. (R. 561), compare (R. 559, 560).

### 2. *Standard for Evaluating Medical Opinions*

A treating physician's opinion about the nature and severity of a claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician's opinion. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).

A treating source opinion not entitled to controlling weight is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." Watkins, 350 F.3d at 1300. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing

performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. §§ 404.1527(c)(2-6), 416.927(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)). However, the court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300).

After considering the above factors, the ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion. If the ALJ rejects the opinion completely, he must give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

### 3. *Analysis*

Plaintiff's suggestion that Dr. Rettinger's opinions are worthy of greater weight than those of Dr. Axline and Dr. Siemsen because he had the benefit of the September 2012 MRI report whereas they did not is without merit. The responsibility for the determination of disability in a case such as this is that of the ALJ, not of a physician. The ALJ considered the 2012 MRI report, and explained that Dr. Rettinger's opinion that

report confirmed nerve root impingement was contrary to both the report itself and the report of the June 2009 MRI. (R. 560). Plaintiff has not shown error in this finding.

Plaintiff claims error in the ALJ's evaluation of Dr. Mongeau's examination report. (Pl. Br. 19-20). She argues that "whether Plaintiff's extension was at 10 degrees or reduced 10 degrees and/or her lateral bending was at 15 degrees or reduced 15 degrees, her extension and lateral bending were significantly reduced." Id. at 20. The court agrees with Plaintiff that Dr. Mongeau's report may be interpreted two ways and that either interpretation results in a "significant reduction" in Plaintiff's back extension and flexion. However, as the ALJ specifically noted, "Dr. Mongeau did not offer any opinions with regard to the claimant's specific physical _functional_ capabilities or limitations." (R. 557) (emphasis added). And Plaintiff does not point to functional limitations from such decreased back flexion and extension which would preclude the RFC assessed by the ALJ.

Plaintiff also points to Dr. Mongeau's opinion that Plaintiff's "ability to ambulate within her home and community would be enhanced if she had a single point cane" (R. 423) and suggests error in the ALJ's failure "to address Plaintiff's need for a single point cane when ambulating." (Pl. Br. 20). But, Plaintiff ignores Dr. Mongeau's statement earlier in the same paragraph, "The patient reports the ability to ambulate a couple of blocks before having to sit and rest." (R. 423). While a single point cane might _enhance_ her ability to ambulate, Plaintiff does not explain how it was error for the ALJ to fail to _require_ the use of a single point cane in her RFC when she is able to ambulate a couple of blocks without it before having to sit.

Plaintiff claims it was error for the ALJ to question "Dr. Rettinger's opinion Plaintiff was not a candidate for additional surgery [when] he failed to identify any contrary medical evidence." (Pl. Br. 22) (citing R. 559). This argument apparently relies upon the ALJ's discussion of Dr. Rettinger's letter to Plaintiff's counsel:

> Dr. Rettinger noted that he also advised the claimant not to undergo any additional back surgeries. However, there is no evidence in the record that Dr. Rettinger is trained in the orthopedic or neurology fields of medicine, or that he referred the claimant to any specialist who is trained in either of those fields. The record shows that the claimant has not been recommended for any new back surgery.

(R. 559). The court finds no error here. The ALJ was explaining his bases for discounting Dr. Rettinger's opinions expressed in the letter to Plaintiff's counsel and the fact Dr. Rettinger is not a specialist in orthopedics or neurology and did not refer Plaintiff to either specialist is a basis to question his opinion in this regard. Moreover, the ALJ is correct that there has been no recommendation for new back surgery.

Plaintiff claims error in the ALJ's finding that Dr. Rettinger's opinions were "substantially based on subjective information that the claimant provided to him." (Pl. Br. 23) (quoting R. 560, but, see also R. 558). As Plaintiff argues, "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports." McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002). Where the ALJ has no legal or evidentiary basis for finding that a treating physician's opinion is based only on plaintiff's subjective complaints, his conclusion to that effect is merely speculation which falls within the prohibition of McGoffin. Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004). Such a conclusion must be based upon evidence taken

from the administrative record.  <u>Victory v. Barnhart</u>, 121 F. App'x 819, 823-24 (10th Cir. 2005).  Here, the ALJ based his finding on evidence from the record.  Plaintiff's argument ignores the paragraph in the decision immediately before the ALJ's first finding that Dr. Rettinger's opinion was based on Plaintiff's subjective information:

> During the June 7, 2013 office visit with Dr. Rettinger, the claimant reported the following subjective complaints.  Her back pain started 15 years ago and was now severe but stable.  It was occurring persistently in her lower back and radiating to her right calf.  She described the pain as "an ache, burning, shooting and throbbing."  Her symptoms were being aggravated by ascending stairs, daily activities, descending stairs, extension, flexion, lifting, twisting and walking.  Her symptoms were relieved by Naprosyn and tramadol that "help some."  She said she did not tolerate Lortab.  Upon examination and testing, Dr. Rettinger noted the following pertinent findings regarding the claimant.  She appeared in no apparent distress.  She had tenderness in her paraspinous muscles in her lumbar spine and thoracic spine.  She had pain in her right buttock but no pain in her right greater trochanter.  She had pain in her right sacroiliac joint.  The Patrick's (Faber) sign was positive on the right.  She showed moderate pain with range of motion testing of her thoracic spine and severe pain with range of motion testing of her lumbar spine.  She had a normal balance and gait.  Her extremities appeared normal.  Her sensory and motor exams were normal.  Dr. Rettinger listed a sole diagnosis of lumbago but noted that the claimant's right L5 radiculopathy "is severe and unchanged for > 5 years."  Dr. Rettinger prescribed gabapentin, Naprosyn, and tramadol "for back pain."

(R. 558).  Plaintiff reported that she was disabled, but what she presented was not the picture of one who is "disabled by her chronic back pain with right-sided radiculopathy," as Dr. Rettinger stated in his office note, and the ALJ quoted.  (R. 558, quoting R. 867).  As the ALJ noted, Dr. Rettinger diagnosed only lumbago, and prescribed pain medications not usually associated with disabling pain.

Plaintiff's appeal to the ALJ's alleged failure to identify the evidence supporting the inconsistencies he found is to a similar effect.  As suggested by the paragraph quoted

30

above, the ALJ's 19-page single-spaced decision was unusually thorough and well-cited to the record. The ALJ's reasoning is evident to any fair reader. At every turn, Plaintiff's citation to online articles suggesting what her impairments <u>may</u> cause, and limitations which they <u>can</u> produce, along with her explanations of how the evidence should be interpreted differently than did the ALJ leaves the court with the firm conviction that she desires the court improperly to reweigh the evidence and substitute its judgment for that of the ALJ. Lacking from her argument, is an explanation why the ALJ's decision is not supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Perales</u>, 402 U.S. at 401; <u>see also</u>, <u>Wall</u>, 561 F.3d at 1052; <u>Gossett</u>, 862 F.2d at 804.

### C.      Plaintiff's Allegations of Symptoms

Plaintiff claims the reasons the ALJ provided for discounting Plaintiff's allegations of symptoms are contrary to the record evidence. (Pl. Br. 31-32). She argues, "contrary to the ALJ's statements, both the objective medical evidence and Dr. Axline's testimony were consistent with Plaintiff's subjective complaints. Further, and as the ALJ acknowledged, Plaintiff's complaints of disabling pain and her limitations associated with that pain are related to and consistent with her medical impairments." (Pl. Br. 31). (citing R. 554, where the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms").

Plaintiff's argument misapplies the legal standard for evaluating a claimant's allegations of symptoms resulting from her impairments. To be sure, the ALJ must consider (1) whether Plaintiff has shown by objective medical evidence an impairment

which could produce the alleged disabling symptoms; (2) if so, whether there is a "loose nexus" between that impairment and Plaintiff's subjective allegations (using Plaintiff's words, factor two can be stated as, whether "Plaintiff's complaints of disabling pain and her limitations associated with that pain are related to and consistent with her medical impairments"); and (3) if so, whether, considering all the evidence, both objective and subjective, Plaintiff's alleged symptoms are in fact disabling. Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993). Plaintiff's argument that "both the objective medical evidence and Dr. Axline's testimony were consistent with Plaintiff's subjective complaints" (Pl. Br. 31) is merely an assertion that the first factor has been met. Plaintiff has shown she has impairments that could produce the disabling symptoms alleged, so at least in a broad sense the objective medical evidence and Dr. Axline's testimony about that evidence are consistent with those symptoms—if they were completely inconsistent with those allegations, the first factor could not be met and the analysis would go no farther. Her argument that "as the ALJ acknowledged, Plaintiff's complaints of disabling pain and her limitations associated with that pain are related to and consistent with her medical impairments," id., is merely an assertion that the second factor is met—there is a "loose nexus" between the proven impairments and Plaintiff's allegations of symptoms. Plaintiff's analysis ignores the third factor; which the ALJ applied and concluded that Plaintiff's allegations of symptoms "are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 554). Plaintiff has not shown error in this conclusion. If the objective medical evidence and Dr. Axline's testimony were entirely consistent with Plaintiff's subjective complaints—as

Plaintiff's argument implies—Dr. Axline would have opined that she was disabled. However, the functional limitations he opined would allow a range of light work (R. 35-36) despite his acknowledgment that an individual such as Plaintiff that has had prior back surgery and severe degenerative disc disease could have severe back pain. Id. at 39.

Plaintiff also argues "the ALJ's RFC assessment did not include any discussion of Plaintiff's ability to sustain work activities" (Pl. Br. 12) and failed to link the medical evidence to his RFC assessment. Id. at 13. Plaintiff is correct to the extent that the ALJ did not specifically state "Plaintiff is able to sustain work activities with the RFC assessed, eight hours a day, five days a week on a sustained basis," and he did not state that a particular piece of medical evidence or a particular medical opinion justified a particular limitation assessed. But, he did state, "In sum, the evidence in this case shows that the claimant is not precluded from all work. There is nothing in the record to show that the claimant cannot perform work within the limitations set forth in her determined residual functional capacity." (R. 564). Moreover, as is sufficiently demonstrated by the court's discussion above, the extensive 19-page single-spaced decision at issue provided the court and any fair-minded reader a roadmap through the ALJ's rationale and the reasons for his decision. "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012) (citing Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004)); Wall, 561 F.3d at 1068-69). The narrative discussion required by SSR 96-8p to be provided in an RFC assessment does not require citation to a medical opinion, or even to medical evidence in the administrative record for each RFC limitation

assessed.  Castillo v. Astrue, No. 10-1052, 2011 WL 13627, *11 (D. Kan. Jan. 4, 2011).

"What is required is that the discussion describe how the evidence supports the RFC

conclusions, and cite specific medical facts and nonmedical evidence supporting the RFC

assessment."  Id.  See also, Thongleuth v. Astrue, No. 10-1101-JWL, 2011 WL 1303374,

*13 (D. Kan. Apr. 4, 2011).  There is no need in this case, or in any other, for the

Commissioner to base the limitations in his RFC assessment upon specific statements in

medical evidence or opinions in the record.

## D.    The Three-Phase Winfrey Analysis

The first phase of the Winfrey analysis is an RFC assessment, which as discussed

above was adequately made in this case.  Plaintiff argues that the ALJ erred at phase two

by failing to provide an on-the-record finding regarding the demands of Plaintiff's past

relevant work, and "the ALJ merely delegated the phase two and phase three findings to

the vocational expert," which is the specific error found in Winfrey.  (Pl. Br. 33).  The

Commissioner argues "The ALJ satisfied his duty to obtain specific information as to the

functional demands of Plaintiff's past relevant work, including that he obtained the job's

title, DOT number, exertional level, and skill level."  (Comm'r Br. 19) (citing Bales v.

Colvin, 576 F. App'x 792, 799-800 (10th Cir. 2014)).  She adds that the ALJ

"approvingly incorporated the vocational expert's testimony about the demands of

Plaintiff's past relevant work at phases two and three of the step-four inquiry."  Id. at 20.

She points out that "an ALJ is permitted to incorporate a vocational expert's testimony

and this was sufficient to satisfy the requirement for specific findings."  Id. (citing Doyal

v. Barnhart, 331 F.3d 758, 761 (10th Cir. 2003)).  In her Reply Brief, Plaintiff

distinguishes <u>Bales</u> and <u>Doyal</u>, arguing that the ALJ here did not question the VE at the hearing regarding the demands of past work, the VE did not discuss those demands; and the ALJ did not quote the VE testimony in support of his own findings. (Reply 15).

The court finds no error here. As Plaintiff suggests, at step four of the sequential evaluation process, the ALJ is required to make specific findings in three phases. <u>Winfrey</u>, 92 F.3d at 1023 (citing SSR 82-62, 1975-1982 West's Soc. Sec. Reporting Serv., Rulings 809 (1983)). In phase one, "the ALJ should first assess the nature and extent of [the claimant's] physical limitations." <u>Winfrey</u>, 92 F.3d at 1023. In phase two, the ALJ must "make findings regarding the physical and mental demands of the claimant's past relevant work." <u>Winfrey</u>, 92 F.3d at 1024. Finally, in phase three, the ALJ must determine "whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." <u>Id.</u>, 92 F.3d at 1023. The findings at all three phases are to be made on the record by the ALJ. <u>Winfrey</u>, 92 F.3d at 1025; <u>see also</u>, SSR 82-62, 1975-1982 West's Soc. Sec. Reporting Serv., Rulings, at 813 ("decision must contain ... specific findings of fact" regarding each of the three phases).

The ALJ assessed Plaintiff's limitations, found no mental limitations and stated her physical limitations in the RFC assessed. (R. 552). He stated his phase two findings regarding Plaintiff's past relevant work as a dispatcher; that it is physically sedentary, mentally semiskilled, and requires a specific vocational preparation (SVP) of 4. (R. 564). He also stated his phase three findings:

In response to the undersigned's questions that assumed the existence of a
hypothetical individual of the claimant's age, education, past relevant work
experience, and residual functional capacity, the vocational expert testified
that such an individual could perform the claimant's past work as a
dispatcher. Based on the testimony from the vocational expert, the
undersigned finds that the claimant can perform her past relevant work as a
dispatcher.

(R. 564). Although a greater explanation would have been helpful to the court, more is

not required.

Plaintiff's argument of error because the ALJ did not question the VE about the

functional demands of Plaintiff's past relevant work at the hearing and the VE did not

discuss those requirements at the hearing is without merit. The record contains Exhibit

16E, a "Past Relevant Work Summary" which includes the VE's evaluation of Plaintiff's

work as a dispatcher, among other jobs. (R. 862) (cited in the decision at R. 564). That

summary notes that Plaintiff's work as a dispatcher was sedentary and SVP 4, or

mentally semiskilled. Id. Although those specific facts were not discussed at the hearing

in this case, the ALJ specifically named exhibit 16E in his questioning of the VE and

explained, "You heard the discussion earlier between me and the attorney [(Plaintiff's

attorney)]. It does appear that the Dispatcher is the only SGA [(significant gainful

activity)] job, so that'd be the only one I would consider past relevant work." (R. 603).

Moreover, the VE later explained that Plaintiff did not acquire skills in her work as a

dispatcher that are readily transferable to other skilled or semiskilled work, id., and that if

an individual working as a dispatcher were providing wrong information, it "wouldn't be

tolerated for long." Id. at 605. The discussion at the hearing was sufficient to provide a

basis to justify the ALJ's reliance on Exhibit 16E as the VE's opinion regarding past relevant work as a dispatcher.

Likewise, Plaintiff's argument that "the ALJ herein did not 'quote the [VE's] testimony approvingly, in support of his own findings at phases two and three of the analysis'" is without merit. (Reply 15) (citing R. 564, but apparently quoting Doyal, 331 F.3d at 761). The fact that the ALJ here did not quote the VE-supplied information or testimony is irrelevant. He relied upon that information in reaching his phase two and three findings, and that is appropriate.

Plaintiff next argues that this case is like "this Court's [sic] decision in Nagengast v. Astrue, No. 10-1287-JWL, 2011 WL 3794282, *3[2] (D. Kan. Aug. 25, 2011), where the ALJ improperly "rel[ied] on the DOT job description alone to satisfy the requirement that [h]e determine the demands of claimant's past relevant work." (Reply 15-16). This case may be distinguished from this court's decision in Nagengast. While it clearly would have been helpful for the ALJ to have provided a more extensive explanation in this case, the ALJ's step four finding and analysis in Nagengast was quoted in its entirety in the court's decision. It consisted of the step four finding and a two-sentence paragraph concluding that the plaintiff was able to perform her past relevant work as it is generally performed. Nagengast, 2011 WL 3794283 at *3. Here, the ALJ's explanation is much more extensive, and he properly relied on information provided by the VE to reach his phase two and three conclusions at step four of the sequential evaluation process.

_____

[2] The court notes a typographical error in Plaintiff's citation. The correct Westlaw citation is 2011 WL 3794283.

Plaintiff has shown no error in the decision at issue.  Therefore, the case will not be remanded.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated May 29, 2019, at Kansas City, Kansas.




s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**